91 So.2d 238

**Ralph BOWMAN**

v.

**Charles WATTS et al., d/b/a Watts Excavating & Contracting Company.**

**7 Div. 339.**

Court of Appeals of Alabama.

Dec. 4, 1956.

. Roberts & Wright, Gadsden, for appellees.

Hawkins & Rhea, Gadsden, for appellant.

HARWOOD, Presiding Judge.

In the suit below the plaintiff claimed $987.15 for work and labor done, etc.

The defendant filed pleas of the general issue, and a special plea of setoff and recoupment averring that the plaintiff was indebted to him in the sum of $1,600, for the breach of an agreement to build two dams on defendant's property; the plea averring that the plaintiff agreed to build the dams in a workmanlike manner, and so constructed as to hold the lakes created by said dams.

Thereafter the pleading was in short by consent.

The jury returned a verdict in favor of the plaintiff in the amount claimed, and the defendant's motion for a new trial being overruled, he perfected his appeal to this court.

The only assignment of error specified and argued in appellant's brief relates to the sustaining by the trial court of plaintiff's objections to questions propounded to defendant's witness L. E. Locklear, an employee of defendant, as to whether a Mr. Gargus, an employee of the plaintiff, had made a statement that appellees guaranteed the work.

In this connection the evidence introduced by the plaintiff firm, the Watts Excavating Company, tended to show that the

firm had built two dams for the appellant; that all agreements had been made between the appellant and Mr. James E. Watts, a member of the Watts Excavating Company partnership. Mr. Watts testified that he told the appellant that he would guarantee that the work would be done according to specifications as to the amount of dirt put in the dams, the type of soil used, etc., but he could not guarantee the dams would not leak since he never made such guarantees because such fact can never be determined until the dam is built.

This controversy really centers around work and labor done in attempting to make leak proof the second dam. An old railroad fill was used for the base of this dam. Mr. Watts testified that he told the appellant that because of the composition of the fill and its porous quality of cinders it might leak, but that it would not be too expensive to put a clay cap on the fill and see if it would work. This was done, and the dam did leak. The appellant then consulted Mr. Watts of the appellee firm, and Mr. Watts told him that the only thing he knew to do was to dig down to firm clay in front of the dam and begin the cap there. The appellant told him to do the work. This involved digging a trench some twelve feet deep in front of the dam and filling it with clay.

The appellant refused to pay for this additional work on the grounds that the dam still leaked.

The evidence is in conflict as to whether the lowering of the water behind the dam was due to leakage, or to evaporation during the drought of the summer.

Actually there is little conflict between testimony offered by the appellee and the appellant. As to the agreement, the appellant testified that Mr. Watts stated he "guaranteed" his work. Mr. Watts states the same, though he says he told the appellant he guaranteed his work only as to complying with the agreed specifications. The appellant testified that had Mr. Watts told him the dam might, or might not, hold water, he would never have had the work done.

The actual work was done by a Mr. Gargus, who had been employed by the appellee for some two years as a bulldozer operator. So far as the record discloses, this was Mr. Gargus' only connection with the appellee firm.

During the course of the work on the dams he was occasionally assisted by the witness Locklear, who worked on appellant's farm. As before stated, it was from the appellant's witness Locklear that the appellant sought to elicit testimony as to a statement by Gargus that appellees guaranteed their work.

The burden of establishing an agency rests upon the person affirming it. Capital Security Co. v. Owen, 196 Ala. 385, 72 So. 8; Pullman Co. v. Meyer, 195 Ala. 397, 70 So. 763.

If any agency existed between the appellee firm and Gargus, it must arise from implication. The evidence shows that all contractual agreements for the work on the dams were made by the appellant and Mr. Watts, a partner in appellee firm. The evidence further shows that Gargus was employed as a bulldozer operator by the appellee firm. Although he had worked for the appellee firm for some two years, the evidence shows that such work had been only in his capacity as a bulldozer operator. There is nothing in such evidence tending to establish an implied agency for Gargus to contract for the appellees. On this basis the court properly sustained the objection to the question as to Gargus' statement to Locklear.

The question was probably objectionable on other grounds. Being objectionable on the grounds above discussed we pretermit consideration of these other grounds.

Affirmed.